when he submitted this will to the testatrix, had said to her, "I agree that, in case any of these legacies are void, I will apply the property coming to me under this bequest to carrying out your intention with regard to this charitable disposition of your property, and that my co-executors will unite with me in such a disposition of all property that passes to them under this bequest," could it be said that either of the executors could have accepted the bequest, with knowledge of this obligation made on their behalf and obtained upon such a representation, and repudiate the obligation? It seems to me clear that they could not; that, accepting the bequest, they would be clearly bound by the conditions upon which it was given, and would ratify the promise made on their behalf. This is just the understanding that the law implies in consequence of the acts of Mr. Parsons in inducing the testatrix to make this will in question. Under the circumstances, the law implies a tacit understanding between Mr. Parsons and the testatrix that this property should go to the executors as executors, not for their own benefit, but, although vesting in them individually, should be applied to carry out the intention of the testatrix. That having been the tacit understanding under which the will was executed, however innocent these two executors may have been of the arrangement between Mr. Parsons and the testatrix, upon accepting the bequest they ratified the understanding between their co-executor and co-legatee and the testatrix which induced the execution of the will; and it is quite evident that this is exactly what the defendants Bartow and Fairchild understood was the condition upon which the bequest to them was made. It is true that they say that they understood there was no "legal obligation," but it seems to me clear that they did understand that the testatrix did not intend that they should take this property as absolute owners for their own benefit, but impressed with an obligation or trust to carry out her wishes, and that, when they accepted it upon that condition, they were bound to apply it in such a way that it would accomplish that intention.

I also concur with Judge RUMSEY in his disposition of the other questions involved, and I therefore think that the judgment entered here should be that the residuary estate of the testatrix not disposed of by the will should go to the plaintiff, as the executrix of the next of kin. I think I should say, also, that I concur with Mr. Justice RUMSEY in saying that these executors have but too faithfully attempted to carry out the trust that the executrix imposed upon them, and that it was the illegal intent of the testatrix to make a disposition of her property prohibited by law, attempted to be carried into effect by her executors, that in my opinion has rendered their action invalid.

(9 App. Div. 602.)

### In re MORRIS' ESTATE.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

WILLS—WHEN LEGACY VESTS.

> Where testator devised his estate in trust for his wife for her life, with remainder to his children, or, if he should have no children living at the death

of his wife, to the children of his brother, and died without issue, the estate in remainder vested at testator's death in the children of his brother who were living at that time.

Appeal from surrogate's court, New York county.

Judicial settlement of the accounts of Robert C. Embree as executor of and trustee under the will of Jacob W. Morris, deceased. From certain portions of the decree relating to the construction of the will, Lewis Morris appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Carl A. De Gersdorff and H. Snowden Marshall, for appellant.

Lawrence E. Embree and Charles A. Moran, for respondents.

WILLIAMS, J. The facts were found by the surrogate in the decision, and were not excepted to. They are as follows: The testator died January 1, 1863, leaving a will which was executed November 10, 1859. By this will he gave, devised, and bequeathed to his executors all his real and personal estate, in trust: (1) To receive and pay over to his wife all the net income therefrom during her life. (2) At the death of his wife, to assign, transfer, and set over, in fee, all said property to any child or children of his and his wife's who might then be living, dividing the same equally between them; such transfer and division of property not to be made, however, until such child or children should arrive, respectively, at lawful age; the income in the meantime, after the death of the wife, to be applied by the executors to the education, maintenance, and support of such child or children. (3) Provided, however, he should not have any child or children by his wife, him surviving, or living at the death of his wife, then he directed his executors to assign, transfer, and set over all the property to the children of his brother, Richard R. Morris, their heirs, executors, and administrators, forever, dividing the same equally between them; the children, however, of a deceased child taking only a parent's share among them. The testator at his death left an estate consisting entirely of personal property. He left no issue. His wife survived him, and died November 1, 1895. His brother, Richard R. Morris, had four children living at the death of the testator; Helen Morris, Anna Morris, Mary W. Morris, and Sophia P. Morris, afterwards the wife of Charles D. Burrill. Helen, Anna, and Mary W. died without issue before the death of the testator's widow. Sophia P. survived such widow, and is still living. Helen Morris died June 30, 1874, leaving a will executed January 13, 1874, and admitted to probate after her death, whereby, among other things, she gave and bequeathed to the sons of her cousin Charles M. Morris all her right, title, and interest in the property bequeathed to her sisters and herself by Jacob W. Morris, deceased. Lewis Morris, the appellant, is the only surviving son of Charles M. Morris, the cousin of Helen, who made this will. The surrogate decided that the estate of the testator, Jacob W. Morris, did not, under the will in question, vest in the children of his brother,

Richard R. Morris, until the death of his widow, and therefore the only person entitled to participate in the distribution of the estate was Mrs. Burrill; that the appellant had no interest therein. Thereupon the decree was made and entered in accordance with the decision of the surrogate, and from such decree this appeal is taken.

The question to be determined is narrowed down to the single one whether, under the will, the estate vested in the children of Richard R. Morris at the time of the death of the testator, or the death of his widow. It is a well-settled rule for the construction of wills, that, if futurity is annexed to the substance of the gift, the vesting of title is suspended, but if the gift is absolute, and the time for payment only is postponed, the gift is not suspended, but title vests at once. Smith v. Edwards, 88 N. Y. 103; Miller v. Gilbert, 144 N. Y. 73, 38 N. E. 979; In re Baer, 87 Hun, 483, 34 N. Y. Supp. 1016, affirmed 147 N. Y. 348, 41 N. E. 702. And out of this distinction has grown the rule that, where the only gift is in the direction to pay or distribute at a future time, the case will not be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. Smith v. Edwards and In re Baer, supra; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; Warner v. Durant, 76 N. Y. 136; Shipman v. Rollins, 98 N. Y. 311; Bowditch v. Ayrault, 138 N. Y. 229, 34 N. E. 514. This latter rule is not, however, inflexible or arbitrary, and is to be applied in subordination to the testamentary intention, and not as destructive of such intention. If the language of the will is doubtful, resort must be had to the primary canon of construction,—that the intent of the testator, collected from the entire will, must prevail, and general rules adopted by the court, in and of the interpretation of wills, must give way, where their application in any particular case would defeat such intention. Cases above cited, and Campbell v. Stokes, 142 N. Y. 29, 36 N. E. 811; In re Young, 145 N. Y. 538, 40 N. E. 226; Fargo v. Squiers, 6 App. Div. 485, 39 N. Y. Supp. 648. And there is another rule, which was laid down in Packham v. Gregory, 4 Hare, 396, and which has been approved of by the court of appeals of this state (Loder v. Hatfield, 71 N. Y. 92, 100; Bushnell v. Carpenter, 92 N. Y. 270; In re Young, 145 N. Y. 535, 940, 40 N. E. 226), —that, even though there be no other gift in the will than that contained in a direction to pay or distribute in the future, yet, if such payment or distribution appear to be postponed for the convenience of the estate only (as to let in some intermediate estate), the ulterior legatees will take a vested interest at the death of the testator. This rule does not apply to a will where the postponement of the payment or distribution is upon any contingency, but only to a will where the sole object of the postponement is to let in an intermediate estate. This same distinction is embodied in the Revised Statutes, which provide:

"Future estates are either vested or contingent. They are vested when there is a person in being, who would have an immediate right to possession of the lands, upon the creating of the intermediate or precedent estate. They

are contingent, while the person to whom, or the event upon which they are limited to take effect, remain uncertain." 1 Rev. St. p. 723, § 13.

This provision as to real estate applies also to personal property. Id. p. 773. This rule and this statute are harmonious, and are particularly applicable to this will; and, so applying them, there can be no doubt that this estate was vested at the death of the testator. Whatever contingency existed at the time the will was executed entirely disappeared at the time of the testator's death. It was certain, when he died, that he left no children by his wife. The will took effect at the testator's death, and then the four children of testator's brother Richard were living, and the only thing standing between them and the right to possession of the estate was the intermediate life estate of the widow of the testator. Neither the persons to whom, nor the event upon which, their estate was limited, was uncertain. The widow was certain to die, and the persons who were then entitled to the estate were certainly the four children of testator's brother Richard. There was no contingency in the case. The estate was therefore, both under the rule referred to, and under the statute, at the time the testator died, a vested, and not a contingent, estate.

We do not deem it necessary to refer to other considerations suggested by the appellant for his contention. The decree is erroneous in the provisions appealed from, and, as to those provisions, should be reversed, with costs; and, inasmuch as the facts are not in dispute, the proper decree should be directed to be entered by this court in accordance with the views expressed in this opinion. All concur.